OPINION OF THE COURT
 

 Graffeo, J.
 

 In the 11 years since
 
 People v Mooney
 
 (76 NY2d 827), this Court has not been presented with an opportunity to revisit the admissibility of expert testimony proffered on the issue of the reliability of eyewitness identification. We now hold that, while such expert testimony is not inadmissible per se, the decision whether to admit it rests in the sound discretion of the trial court. Here, the trial court did not abuse that discretion in denying its introduction.
 

 In the early morning, Michael Perani’s car was stolen at gunpoint in Manhattan. The robbery occurred in an area that was well illuminated by a street lamp and lights from a nearby store. Perani stood only four or five feet from defendant and
 
 *161
 
 exchanged words with him during the brief encounter. Defendant drove off with the vehicle and Perani telephoned for assistance, but the police were unable to locate defendant.
 

 Defendant was arrested two months later, after he was stopped for a traffic violation and discovered driving Perani’s stolen vehicle.
 
 *
 
 It was not until more than six months from the arrest that the detective assigned to the robbery learned that defendant had been found in possession of Perani’s automobile. Upon acquiring this information, the detective compiled a photographic array, which he displayed to Perani, who identified defendant as the person who stole his car. Ten days later, Perani again identified defendant in a lineup.
 

 During a pre-trial hearing, defendant moved to introduce at trial the testimony of a “psychological expert” for the purpose of explaining to the jury the factors that may influence the perception and memory of a witness and affect the reliability of identification testimony. Defense counsel’s affirmation stated that “the expert would testify how factors such as the duration of an encounter, the passage of time, stress involved in an encounter, assimilation of post-incident information and race, have been shown by the scientific community to affect memory and eyewitness identification. The expert also would testify about the absence of correlation between eyewitness confidence and the accuracy of an identification.” The hearing court summarily denied the application.
 

 The action proceeded to trial before a different Justice. During the People’s case-in-chief, defendant renewed his request to introduce expert testimony regarding the reliability of eyewitness identification, referencing his earlier written motion and an off-the-record sidebar discussion from the first day of trial. Specifically, defendant contended that the passage of time between the crime and the identification, the trauma of robbery and the lack of correlation between confidence and accuracy of identifications were issues for an expert to explain. The court initially considered whether it was bound by the hearing court’s earlier ruling, but proceeded to address defendant’s motion and ultimately denied it.
 

 The jury convicted defendant of one count of robbery in the first degree and he was sentenced to an indeterminate prison
 
 *162
 
 term of 4 to 12 years. The Appellate Division unanimously affirmed the judgment of conviction and sentence (267 AD2d 42). A Judge of this Court granted defendant leave to appeal (95 NY2d 836), and we now affirm.
 

 Although the issue of admissibility of expert testimony regarding the reliability of eyewitness identification has been addressed in other jurisdictions
 
 (see generally,
 
 1 McCormick, Evidence § 206, at 776-779 [5th ed 1999]), it remains an unresolved issue in this State
 
 (see, People v Alexander,
 
 94 NY2d 382;
 
 People v Mooney,
 
 76 NY2d 827).
 

 As a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court. “It is for the trial court in the first instance to determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefited by the specialized knowledge of an expert witness”
 
 (People v Cronin,
 
 60 NY2d 430, 433). Essentially, the trial court assesses whether the proffered expert testimony “would aid a lay jury in reaching a verdict”
 
 (People v Taylor,
 
 75 NY2d 277, 288). In rendering this determination, courts should be wary not to exclude such testimony merely because”, to some degree, it invades the jury’s province. As we have previously noted, “[e] xpert opinion testimony is used in partial substitution for the jury’s otherwise exclusive province which is to draw ‘conclusions from the facts.’ It is a kind of authorized encroachment in that respect”
 
 (People v Jones,
 
 73 NY2d 427, 430-431 [internal citation omitted] [quoting
 
 People v Cronin, supra,
 
 60 NY2d, at 432]).
 

 Despite the fact that jurors may be familiar from their own experience with factors relevant to the reliability of eyewitness observation and identification, it cannot be said that psychological studies regarding the accuracy of an identification are within the ken of the typical juror
 
 (see, People v Cronin, supra,
 
 60 NY2d, at 433). Moreover, in recognition that expert testimony of this nature may involve novel scientific theories and techniques, a trial court may need to determine whether the proffered expert testimony is generally accepted by the relevant scientific community
 
 (see, People v Wesley,
 
 83 NY2d 417, 423-429).
 

 Applying this framework to the case at bar, we note that in summarily rejecting defendant’s motion on the ground that such testimony was per se inadmissible, the hearing court
 
 *163
 
 failed to exercise its discretion. The trial court, however, subsequently entertained defendant’s renewed request for the introduction of expert testimony. Since the motion was considered during the People’s case-in-chief, the court was in a position to weigh the request against other relevant factors, such as the centrality of the identification issue and the existence of corroborating evidence. For example, by this stage of the proceedings, the court had heard testimony regarding the circumstances under which Perani observed defendant during the incident. Testimony had also been elicited from the police officer who arrested defendant while in possession of Perani’s stolen vehicle. Hence, the court was aware of corroborating evidence in addition to the identification testimony. Given the particular facts and circumstances of this case, we cannot say the trial court’s denial of defendant’s motion constituted an abuse of discretion.
 

 Additionally, contrary to defendant’s contention, the photographic array presented to Perani was not unduly suggestive. Both the hearing court and the Appellate Division found that, although there were slight differences among the six photographs that comprised the array, all of the persons depicted were similar in appearance. We conclude that the subtle differences in the photographs, including the arrest plates, were not “sufficient to create a substantial likelihood that the defendant would be singled out for identification”
 
 (People v Chipp,
 
 75 NY2d 327, 336).
 

 Defendant’s contentions with respect to alleged instances of prosecutorial misconduct are without merit. Further, the constitutional challenge to the trial court’s denial of defendant’s request for testimony from the 911 operator who received Perani’s initial telephone call describing his assailant is not preserved for our review. To the extent defendant claims this denial was an evidentiary error, we hold that any such error was harmless
 
 (see, People v Crimmins,
 
 36 NY2d 230, 238-243).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.
 

 *
 

 Defendant was charged with criminal possession of stolen property in the third degree and fourth degree, and unauthorized use of a vehicle. Subsequently, the felony criminal possession charges were reduced to a misdemeanor charge of criminal possession of stolen property in the fifth degree. The record does not reveal how these charges were resolved.