OPINION OF THE COURT
William C. Donnino, J.
Defendant’s pretrial application for permission to call an *546 expert on identification requires a review of the current law, a detailing of the requirements of such an application, and a determination of the sufficiency of the instant application. For the reasons stated herein, the court finds the application not presently sufficient to inform the court’s discretion and grants the defendant leave to submit a supplemental application in accordance with this opinion.
I
The touchstone of identification testimony is its accuracy. Relevant expert identification testimony should, therefore, present specialized knowledge about identification that would help the finder of fact determine the accuracy of the identification.[1] Expert identification testimony that would serve merely to confirm what a typical juror would know or would be told in the instructions of a trial court may, in the trial court’s discretion, be disallowed. At times, however, expert identification testimony, while confirming something a typical juror may know or be told in jury instructions, may nonetheless be required in order to add specialized information about the subject that is beyond the ken of the juror and relevant to the facts at hand. (See People v Lee, 96 NY2d 157, 162 [2001]; see also People v Cronin, 60 NY2d 430, 433 [1983] [“While jurors might be familiar with the effects of alcohol on one’s mental state, the combined impact of a case of beer, several marihuana cigarettes and 5 to 10 Valium tablets on a person’s ability to act purposefully cannot be said as matter of law to be within the ken of the typical juror”].)[2]
*547 People v Lee authorized the admission of expert testimony on identification in the discretion of the trial court, but left it to the trial court to determine what should inform that discretion and how it should be exercised in individual cases.
In Lee, the trial court apparently accepted that there existed valid expert testimony on identification that was relevant to a determination of the accuracy of the identification in that case. Procedurally, the trial court considered the application during the trial. The Court of Appeals found that to be significant because it provided the trial court with a firsthand account of the identification testimony and the evidence that corroborated that identification. This permitted the trial court to “weigh” the application against such relevant factors as “the centrality of the identification issue and the existence of corroborating evidence.” (People v Lee, 96 NY2d at 163.) Having done so, the trial court’s denial of the application for the expert identification testimony was held to have been within its sound discretion.[3]
Lee thus suggests that if a contested identification is corroborated by other evidence, there may be no need for expert testimony. On the other hand, if identification testimony is not corroborated by other evidence or the other evidence is not compelling, expert testimony may be warranted.
Limitations on when to permit expert identification testimony may in part stem from a concern about how wide to open the door to expert identification testimony in the absence of a developed record or history in New York as to the validity and nature of expert identification testimony. Lee recognized that such expert testimony “may involve novel scientific theories and techniques,” and thus may require an initial determination of “whether the proffered expert testimony is generally ac *548 cepted by the relevant scientific community.” (People v Lee, 96 NY2d.at 162.) That foundational question was apparently not in issue in Lee.
II
What procedure should be followed and what information should a court consider in order to determine whether to admit expert identification testimony? At least until the law of New York settles on the parameters of expert identification testimony, the application for the admission of such testimony should be made pretrial because the trial court may need to conduct a hearing and that cannot be conveniently done during a trial.
An application to admit expert identification testimony should: (1) to the extent known set forth the pertinent alleged facts of the identification and any corroborative evidence;[4] (2) set forth the name and qualifications of the witness and the “proffered” testimony; (3) correlate the proffered testimony with the facts of the case to demonstrate the relevance of the expert testimony; (4) explain whether the testimony involves “novel scientific theories and techniques,” and if it does, include an offer of proof as to its general acceptance by the relevant scientific community; and (5) explain why the testimony is warranted if an existing standard jury instruction (CJI[NY]2d Identification — One Witness [2001]) would appear to cover the area of the proffered expert testimony.
Once the application is complete, to the extent controverted, a hearing to amplify or verify any of the applicant’s assertions may be required. In some instances, as in Lee, a court may need to defer its final decision until pertinent portions of the People’s case have been heard at trial.
*549 III
The defendant’s application does not presently meet the foregoing criteria.
From the defendant’s application, we learn that the defendant is charged with attempted murder of a cab driver while he was a passenger in the cab. There is no indication whether the incident took place in the daytime or at night, where the passenger was picked up, how long the two were together in the car, or of other relevant identification facts. It is alleged that there is no corroborative evidence of the identification.
On the nature of the identification, the application first specifies that the complainant gave a detailed description of the passenger and of his clothing. The defendant claims to be older and somewhat heavier than the description; otherwise, the description appears to match the defendant. Next, the application alleges that a composite drawing of the passenger was done, but does not state when it was done or whether it resembled the defendant. Lastly, the application states that the defendant was identified in a “photo line up” five days after the incident, and in a “live line up” 13 days after the photographic identification.[5]
The expert’s name is provided but not his qualifications. There is thus no indication whether the witness is properly qualified to testify as an identification expert. The expert’s testimony is not detailed; it is proffered primarily in general terms and in some instances not correlated to the specified factual allegations. There is no indication that the testimony is necessary notwithstanding that some of the proffered testimony, at least as proffered in the application, would appear covered by the standard identification charge. There is no representation of whether the proffered testimony is generally accepted by the relevant scientific community.[6]
*550 To be sure, properly qualified, some of the proffered testimony may be helpful to a jury in determining the accuracy of the identification in this case where identification is central to the case and the only evidence of identification is by a single witness. But, the defendant fails to demonstrate how some of the proffered testimony would be relevant and helpful to the jury in this case.
For example, it is proffered that expert testimony on “cross-racial identification” is required. “Cross-racial identification” is an area not covered by the current standard jury instruction and is an area that may lend itself to expert testimony. In this case, however, it is alleged that such testimony is necessary because the complainant is Hispanic and the defendant is African-American. “Hispanic” is not, however, a racial classification. (State v Valentine, 345 NJ Super 490, 785 A2d 940 [2001].) The race of the complainant is not specified.
The application hypothesizes that the “opportunity for the complainant to observe in this case was limited,” and it concludes that expert testimony is necessary “as to ‘exposure time.’ ” Aside from the paucity of facts relating to this issue, if the proffered expert testimony is limited to telling the jury that the amount of time a witness observes a perpetrator affects the accuracy of the identification, that is not a fact beyond the ken of the typical juror. The standard jury instruction also recognizes that factor and the jury would accordingly be so informed by the judge.[7] The defendant’s application needs to be more specific as to the proffered expert testimony, and its relevance to helping the jury evaluate the accuracy of the identification in this case.
Noting a delay in the identification of the defendant (albeit we do not know when the composite drawing was done or what it revealed), it is proffered that expert testimony is necessary *551 to show that a witness’s memory of a perpetrator diminishes with time. Because the typical juror undoubtedly understands that memory diminishes over time, and the subject is reflected in the standard jury instructions, the defendant needs to expand on what the expert testimony, in the context of the facts of this case, will add that will be helpful to the jury in evaluating the accuracy of the identification.[8]
The defendant proffers expert testimony that the “stress” of a criminal incident would detract from the accuracy of an identification. The People argue that this is not necessarily so. (See People v Breland, 83 NY2d 286, 295 [1994].) Stress is indeed one area of identification where advocates at a criminal trial often have different, and even opposite opinions, as to whether it contributes to an accurate or inaccurate identification. Valid expert identification testimony on the subject should be helpful to the typical juror. In this case, however, there was a period of time, not yet specified, immediately before the alleged crime, during which the complaining witness saw the defendant under circumstances that were not stressful. That fact may not defeat the application for expert testimony on this subject, but it does require an offer of proof tailored to the facts of this case.
*552 The application proffers expert testimony on “ ‘reconstructive memory,’ i.e., that input from other sources, such as the police, may substantially alter or fill in a witness’s perceptions and recollections.” The defendant asserts that such took place here; but, absent further evidence as to what actually occurred here, that conclusion is presently speculative. It may be that given the nature of this purported expert testimony, a final determination on whether to admit such testimony may need to await an evidentiary hearing or the trial. In any event, a typical juror knows that an identification may be influenced by suggestion, and, the standard jury instruction informs them of that.[9] Thus, while valid “reconstructive memory” testimony may be appropriate to this case, the defendant needs to detail further what the expert testimony will be and how the defendant expects it will be helpful to the jurors in this case.
IV
It is not the court’s intention to set up a procedural barrier to expert identification testimony. Concerns about the accuracy of an identification, particularly in a case dependant solely on the identification of one witness, have been paramount in the mind of any fair participant in, or observer of, our justice system. If scientific experimentation about the operation of our senses and memories can enlighten our determination of the accuracy of an identification, then we should embrace it without reservation. During this evolutionary stage of our law, however, focused papers are necessary to facilitate the process and resultant determinations.
Thus, given that we are in the early stages of the evolution of this area of the law in New York, the defendant’s application will not be denied; rather, it will be held in abeyance, and the defendant is granted permission to supplement the application in accordance with this opinion. The People will of course be provided an opportunity to submit a supplemental answer.[10]

. As most recently explained by the Court of Appeals: “In People v Lee (96 NY2d 157, 162 [2001]), we recently restated the long-standing general rule that ‘the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court.’ The role of the trial court is to ‘determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefited by the specialized knowledge of an expert witness’ (People v Cronin, 60 NY2d 430, 433 [1983]). In other words, the trial court must decide whether, depending on the facts of each case, the proffered expert testimony would be helpful in aiding a lay jury reach a verdict (see Lee, 96 NY2d at 162; People v Taylor, 75 NY2d 277, 288 [1990]). As part of this process, the purpose for which the expert testimony is being offered must be examined (see Taylor, 75 NY2d at 292).” (People v Brown, 97 NY2d 500, 505 [2002].)

. The standard instruction on identification includes a list of factors the jury should consider in evaluating the accuracy of an identification. (CJI[NY]2d Identification — One Witness [2001].) Expert testimony that is *547 limited to confirming the relevance of those factors may be unnecessary. On the other hand, expert testimony designed to explain those factors or to supply specialized information about them that would assist the jury in applying them may be required. (See People v Mooney, 76 NY2d 827, 831 [1990] [Kaye, J., dissenting].) If, from our experience with expert identification testimony, a consensus builds to add factors to the list or expand the explanation of some factors, further expert identification testimony on those factors may become unnecessary. (See State v Cromedy, 158 NJ 112, 727 A2d 457 [1999]; 1 McCormick, Evidence § 206, at 779 n 107 [5th ed 1999].)

. It appears from the appellate briefs in Lee that the defendant in Lee proffered an innocent explanation for the corroborative evidence and that the People responded with evidence designed to impeach .that explanation. Lee does not discuss that evidence or, therefore, its import in the exercise of a court’s discretion to determine an application for expert identification testimony.

. The court recognizes that in the absence of pretrial discovery that exceeds the current legal requirements, a defendant may not be able to supply the facts necessary to resolve an application for expert identification testimony. In that instance, the defendant’s application should not be denied for failure to supply those facts. The court’s alternatives will be to direct appropriate discovery whether in response to the application or otherwise, to conduct an appropriate pretrial evidentiary hearing, or to defer resolution of the application until the court has had an opportunity to hear the relevant People’s evidence at trial.
The District Attorney of Bronx County commendably supports pretrial discovery that exceeds legal requirements; in particular, before trial, the prosecutor discloses the police and detective reports about a case that often supply substantial information about the alleged facts. Unfortunately, such disclosure had not taken place prior to the defendant’s instant application, but it will be completed in time for the supplemental application. Whether further discovery is necessary remains to be determined.

. The District Attorney’s response fills in some, but not all, of the pertinent blanks surrounding the alleged facts of the incident. No further information is supplied concerning the circumstances surrounding each identification and no photographic exhibits are presented. There is no statement from the District Attorney on whether there was a composite drawing of the perpetrator. And, the District Attorney is silent as to whether there is additional evidence on the question of identification.

. The District Attorney challenges the foundation for the proffered expert testimony. While on the papers currently before the court, it is premature to determine whether a hearing is required to determine the foundational validity of the proffered testimony, the parties, and the District Attorney in particular, will need to address whether those forms of expert identification *550 testimony advanced in this case that have received judicial and academic acceptance require any further foundation evidence. (See People v Mooney, 76 NY2d at 829-830 [Kaye, J., dissenting]; 1 McCormick, Evidence § 206, at 778-779 [5th ed 1999].)

. “Further, the accuracy of a witness’s testimony identifying a person also depends on the opportunity the witness had to observe and remember that person. Thus, in evaluating the accuracy of identification testimony, you should also consider such factors as: * * *
“Did the witness have an opportunity to see and remember the facial features, body size, hair, skin color, and clothing of the perpetrator?
“For what period of time did the witness actually observe the perpetrator? During that time, in what direction were the witness and the perpetrator facing, and where was the witness’s attention directed?” (CJI[NY]2d Identification — One Witness [2001].)

. Parenthetically, assuming such expert testimony were allowed, the defendant must realize that by introducing expert testimony directed specifically at the effect of a delay in the identification on its accuracy, the defendant will undoubtedly open the door to testimony about the initial identifications, apparently by composite drawing and photograph. If it is known before trial that the defense would elicit such testimony in order to set the stage for expert identification testimony, the People may be permitted to elicit such testimony on their direct case in order to avoid the unfair inference that they deliberately withheld the testimony. If it is not known before trial whether such testimony will be elicited and it turns out that the defense does elicit such testimony, the jury should be informed that the People were prohibited by law from eliciting such testimony on their case.
Over time, in the face of what may become frequent expert testimony on the significance of a delay in identification affecting its accuracy, New York may be required to reconsider the extent of its limitations on the introduction on the People’s case of evidence of a fair identification by composite drawing or photograph. (Cf. People v Huertas, 75 NY2d 487 [1990].) The standard jury instruction tells the jurors to consider the witness’s ability to “remember” and “when” the identification is first made (CJI[NY]2d Identification — One Witness [2001]), and yet in a fair number of cases the jury is not told when in fact the identification was first made because the first identification was made from a composite drawing, or more likely, a photograph. If the jury is informed when the identification or identifications, regardless of their form, are made, the standard jury instruction can be expanded to more specifically address the form of the identification and the significance of a delay in the first identification.

. “When and under what circumstances did the witness identify the defendant? Was the identification of the defendant as the person in question suggested in some way to the witness before the witness identified the defendant, or was the identification free of any suggestion?” (CJI[NY]2d Identification — One Witness [2001].)

. Considering the significance of ensuring accurate identification evidence, thought should be given to creating a commission that includes representatives of the three branches of government. The commission would examine the identification studies and experts, and consider such matters as whether guidelines for the utilization of expert identification testimony should be promulgated, whether an expansion of jury instructions on identification may be appropriate to reflect a consensus of the experts, and whether current decisional and statutory law on the subject of identification remains appropriate.