People v Santiago (2003 NY Slip Op 23919)

People v Santiago

2003 NY Slip Op 23919 [2 Misc 3d 652]

December 19, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 14, 2004

[*1]
The People of the State of New York, Plaintiff,
v
Edwin Santiago, Defendant.
Supreme Court, New York County, December 19, 2003

APPEARANCES OF COUNSEL

Legal Aid Society (Irwin Shaw and Seth Gross of counsel), for defendant. Robert M. Morgenthau, District Attorney (Nichole Parisi and Patricia Barley of counsel), for plaintiff.

{**2 Misc 3d at 652} OPINION OF THE COURT

Edward J. McLaughlin, J.
The case has been transferred to this part for all purposes. The motion practice, with one significant exception, has concluded. {**2 Misc 3d at 653}The motion court ordered Huntley, Dunaway, Wade, and Mapp hearings. It also ordered a Frye hearing (see Frye v United States, 293 F 1013 [DC Cir 1923]) to screen unspecified topics related to expert testimony about the accuracy and reliability of identification testimony. 
This court has read the grand jury presentation and the motion papers addressing the potential topic areas for expert testimony at trial. The court has determined that this is not an appropriate case for an expert witness on any aspect of identification testimony. Consequently, the court will not conduct a Frye hearing as previously ordered (see People v Lee, 96 NY2d 157 [2001] [admissibility of expert testimony on eyewitness identification rests within the discretion of the trial court]).
The facts and factors on which the court bases its decision follow. The victim was alone in an area of a subway station at 5:30 a.m. on a workday morning when a man approached her, faced her, and spoke to her. The victim did not understand the meaning of the man's words. She asked him to repeat them. He did. She gave him a short answer. At some point shortly after they spoke, he slashed at her head and face with an object she never saw, causing multiple wounds to those areas and to her thumb. 
The victim provided a description of her assailant immediately and assisted a police sketch artist the day after the attack to prepare a sketch of her attacker. Two weeks later, the police showed her an array of photographs. She selected defendant's photograph. The next day she chose defendant in a lineup. 
The issue of identification is contested. Indeed, it is the only issue. There is no corroboration of the victim's identification in that no physical evidence exists linking the defendant to the assault. Nevertheless, the court, in the exercise of its discretion, does not [*2]consider this case an appropriate one for an expert identification witness. 
Regardless of the assailant's motives, his initial approach was overt rather than covert. He did not want the victim to flee at his approach or after his arrival. He seemed to want a verbal interchange. He, thus, conducted himself initially in a manner that would not cause the victim to run or strike at him once the interaction began. The jury will be perfectly able to decide whether a woman in the victim's situation would stare at an unsummoned male questioner, avoid looking at a person intruding into her space or try to move, or any combination of reactions.{**2 Misc 3d at 654}
Several of the potential areas of expert testimony as outlined in the defense motion do not apply to this case. The victim did not see and was not aware of a weapon and the assailant did not display one in order to hold the victim at bay. She only was aware of hands going toward her. At a point during the attack, she closed her eyes and ran away. So the traditional weapons focus considerations potentially present during a robbery or burglary do not apply here.
Unlike many lineup situations where a photographic identification did not occur before a lineup, such as when the police arrest someone on an unrelated crime, a tip, because the defendant possessed the proceeds of a crime during an unrelated arrest or confessed to the crime, the victim here must have realized that the person whose photograph she selected would be in the lineup. In such a case, testimony about how police investigation factors could influence a lineup is inappropriate.
The court also finds that the victim's participation in the creation of a sketch on the day after the attack makes this case inappropriate for expert testimony. The court assumes that the defense did not know of the sketch because its existencenot mentioned in either of the motion papers submitted by the partiesmakes several of the identification theory subtopics offered in the defense motion inappropriate for expert testimony. The existence of the sketch differentiates this case from most other identification cases. 
The sketch memorialized the victim's mental image of the assailant just one day after the crime for an objective viewer in a way that words cannot. Unlike some identifying civilian witnesses who often seek to convince a jury of the correctness of an identification despite differences between the defendant on trial and a previously given postevent description, such as by claiming that the recorder did not hear or write the description correctly or that the witness never said the impeaching words, the victim in this case is bound by the image in the sketch should the defense decide to use the sketch for impeachment (see People v Griffin, 29 NY2d 91 [1971]). Under these circumstances, the topics "post-event identification," "forgetting curve," "wording of questions," "confidence malleability" have little meaning. Indeed, by helping to create the sketch and approving its final version, the victim went on the record, for better or worse, about the facial features of her attacker long before any of those topics potentially could influence her lineup identification. Thus, those topics have, on the facts of this case, little, if any, bearing on {**2 Misc 3d at 655}the overall reliability of the victim's identification. For that reason, expert testimony about those topics is inappropriate.
Furthermore, because the People cannot introduce the sketch (see id.), it would be misleading to the jury to permit an expert to testify that a person's memory can fade if the People cannot also offer a sketch that shows a likeness to the accused. On the other hand, if the sketch does not depict an image close to the defendant's likeness, then the defense may introduce the sketch to demonstrate that the victim's recollection in this case was faulty from the outset. If [*3]such be the case, the defense does not need an expert testifying about how someone's memory could produce an incorrect identification because it would have actual evidence of the victim's mistaken identification.
Some areas of the proffered testimony already have been exposed to a Frye hearing and found presently wanting (see People v LeGrand, 196 Misc 2d 179, 193-198 [Sup Ct, NY County 2002] [effect of postevent information not generally accepted]; United States v Langan, 263 F3d 613, 619-622 [6th Cir 2001] [unconscious transfer of data theory not generally accepted]). No such testimony will be admissible at trial.
Some identification related matters are not appropriate for a jury and are unmanageable in a trial setting. Evidence about simultaneous versus sequential lineups falls into that category. Jurors are not experts on constitutional law and procedure, and cannot be educated about those topics during a trial. Also, jurors know as a matter of common sense that a person's memory fades as time passes after an event. The extent of memory loss, however, depends uniquely on a person's makeup and the type of experience and facts under consideration.
Finally, the facts here do not make this case a cross-racial identification as contemplated by the literature.
The court will charge, as it always does, that "certainty" and "accuracy" are different concepts, and that one does not guarantee the other. Before voir dire, the parties may suggest ways to address, during jury selection and in the final instructions, the topic of a witness's confidence if one side feels that the court's charge on "certainty" is not adequate to cover "confidence."