OPINION OF THE COURT
Richard L. Buchter, J.
Recently, the Court of Appeals in People v Lee (96 NY2d 157 *308 [2001]) expanded the discretion of trial courts concerning the admissibility of expert testimony regarding identification.
In the above-captioned trial, a one-witness robbery case, the defendant moves (1) for leave to call an expert witness with regard to the accuracy of cross-racial identification, and (2) for an instruction to the jury in the court’s charge, In essence, that the jury may consider the fact that the identification was cross-racial in evaluating its accuracy and the court will consider these requests in fight of the Lee decision.
While People v Lee (supra) permits expert testimony regarding the accuracy of identification testimony, the issue of expert testimony relating to cross-racial identification continues to be problematic and the use of cross-racial jury instructions remains controversial.
As a threshold issue, the court finds that the scientific underpinnings which would serve as the basis for expert testimony on cross-racial identification are novel and would, in any event, be subject to an analysis under Frye v United States (293 F 1013 [DC Cir 1923]; see also People v Middleton, 54 NY2d 42, 50 [1981]). The Frye test predicates the admissibility of scientific expert testimony on its general acceptance in the relevant scientific community and the jury’s need for the expert’s testimony in analyzing evidence. (People v Taylor, 75 NY2d 277, 288 [1990].)
A growing body of scientific research suggests that witnesses may experience “own-race” bias which impairs the accuracy of cross-racial identification. (State v Cromedy, 158 NJ 112, 120, 727 A2d 457, 461 [1999].) While scientists generally agree that some witnesses experience “own-race” bias, they disagree about the extent to which it affects identification and to which racial groups it applies (158 NJ at 121-122, 727 A2d at 461-462). The unsettled debate over the relationship between “own-race” bias and cross-racial identification would render such expert testimony inadmissible until there is a general agreement about its effects in the scientific community. (People v Wernick, 89 NY2d 111, 115 [1996].)
Even if the academic community arrived at a consensus on the effects of own-race bias on witness identification, the question remains whether this type of expert evidence would be proper for a jury to consider in evaluating the witness’s accuracy in making an identification. While most jurors are unfamiliar with the novel cognitive theories surrounding cross-racial identification, jurors are generally aware of the vagaries *309 involved in witness identification through their own life experiences. (United States v Wade, 388 US 218, 228 [1967].) As urged by the Supreme Court in Wade, it is common knowledge that identification testimony generally is suspect because witnesses may make mistakes or forget what they have seen. (See id. at 228; see also Johnson, Cross-Racial Identification Errors in Criminal Cases, 69 Cornell L Rev 934, 942 [1984].) A trial court should only allow expert testimony where jurors are unable to analyze evidence based on their own common experience and knowledge. (Lee, supra at 162; see also People v Mooney, 76 NY2d 827, 828 [1990].)
In the present case, this court will not permit expert testimony regarding the quality of cross-racial witness identification on the grounds that it falls within the ambit of jurors’ general knowledge and life experience (see Mooney, 76 NY2d at 828), as well as due to its questionable scientific validity.
Absent a general agreement in the scientific community regarding the effects of “own-race” bias and proof that such testimony is needed to aid a jury in assessing identification testimony, expert opinions and expanded jury instruction regarding cross-racial identification should not be employed in criminal trials. Rather, this is an area in which counsel may alert the jury to the likelihood of erroneous cross-racial identifications during cross-examination and summation. (See Mooney, supra at 830; Pointer v Texas, 380 US 400, 404 [1965] [holding that cross-examination exposes falsehoods and elicits the truth of a criminal case].) Summation allows counsel to suggest inferences that jurors may make based on their common sense and life experiences. In contrast, expert testimony is actual evidence in a criminal trial. (People v LeGrand, 196 Misc 2d 179, 189 [2002].) Moreover, a one-witness identification jury instruction or a so-called Daniels charge acts as an additional safeguard, as it permits jurors to consider relevant factors in witness identification and stresses the risks inherent in a finding of guilt based on the testimony of a single identifying witness. (People v Daniels, 88 AD2d 392, 401 [1982].) Thus, the court concludes that the procedural safeguards, to wit, cross-examination, summation, and a Daniels charge, combined with the life experiences of jurors, are sufficient tools for a jury to rationally decide if the accused has been accurately identified.
Accordingly, the defendant’s motion is denied in all respects.