People v Allen (2021 NY Slip Op 05775)





People v Allen


2021 NY Slip Op 05775


Decided on October 21, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 21, 2021

Before: Renwick, J.P., Kapnick, Scarpulla, Rodriguez, Higgitt, JJ. 


Index No. 452378/19 Appeal No. 14460-14461-14462-14463 Case No. 2020-01772 2020-03705 2021-00701 2021-00726 2021-00942 2021-01699 

[*1]The People of the State of New York, by Letitia James, Attorney General of the State of New York, Plaintiff-Respondent,
v
Laurence G. Allen et al., Defendants-Appellants, NYPPEX, LLC, et al., Relief Defendants-Appellants.


Akerman LLP, New York (Massimo F. D'Angelo of counsel), for appellants.
Letitia James, Attorney General, New York (Mark S. Grube of counsel), for respondent.



Judgment, Supreme Court, New York County (Barry R. Ostrager, J., after a nonjury trial), entered May 4, 2021, against defendants and relief defendants in plaintiff's favor, unanimously affirmed, without costs. Appeals from orders, same court and Justice, entered on or about February 4 and June 30, 2020, and February 4 and 26 and March 18, 2021, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff Attorney General of the State of New York commenced this action after a multiyear investigation into allegations that defendant Lawrence G. Allen misappropriated millions of dollars of investor funds for his own personal enrichment and that he and the corporate defendants acting under his control made various misrepresentations to investors. After a nonjury trial the court found in favor of plaintiff on claims alleging securities fraud under the Martin Act, repeated and persistent fraud and illegality in violation of Executive Law § 63(12), and common-law breach of fiduciary duty to investors.
Defendants' argument that plaintiff's claims are usurped by federal law is unavailing. Neither the Securities Litigation Uniform Standards Act (15 USC §§ 77p & 78bbb) nor the National Securities Markets Improvement Act (15 USC § 77r[a][1][A]) preempts plaintiff's claim under the Martin Act (General Business Law art 23-A, § 352 et seq.)(see People v Greenberg, 95 AD3d 474, 480-482 [1st Dept 2012], affd 21 NY3d 439 [2013]). Further, the Martin Act applies, even though this action involves only about 75 investors (see People v Landes, 84 NY2d 655, 659, 663-664 [1994] [Martin Act applied when 12 individuals invested an aggregate of $100,000 in defendant's venture]).
Defendants also contend that a three-year statute of limitations governs the Martin Act claim, that the offending conduct falls outside that three-year period, and that therefore the Martin Act claim is time-barred. This argument is similarly unavailing. Since August 26, 2019, CPLR 213(9) has stated that a six-year statute of limitations governs "an action by the Attorney General pursuant to" the Martin Act or Executive Law § 63(12). Plaintiff commenced the instant action on December 4, 2019, well within the six-year limitations period.
Defendants' contention that CPLR 213(9) should not be applied retroactively ignores the fact that this court applied a six-year statute of limitations to Martin Act claims during the period of defendants' offending conduct. In 1992, this Court held that a six-year statute of limitations applied to Martin Act claims (see State of New York v Bronxville Glen I Assoc., 181 AD2d 516 [1st Dept 1992]). However, on June 12, 2018, the Court of Appeals held that Martin Act claims are governed by a three-year statute of limitations (id. at 626, 632-633). The legislature swiftly reacted by passing CPLR 213(9) (see e.g. Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122-123 [2001]) and instructed that the statute take effect immediately[*2].
Defendants primarily rely on Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332 [2020]) and Aguaiza v Vantage Props., LLC (69 AD3d 422 [1st Dept 2010]), in support of their argument that the court should not have applied a six-year limitations period, but those cases are distinguishable. Unlike the statute in Aguiaza, CPLR 213(9) did not create an entirely new cause of action (cf. 69 AD3d at 423). Moreover, unlike the situation in Regina, where landlords acted in reliance on a four-year statute of limitations, defendants cannot have acted in reliance on a three-year statute of limitations except for the brief period between June 12, 2018 and August 26, 2019, and that period would not be time-barred even if a three-year statute applied.
Defendants argue that no Martin Act violation took place because, although some of defendant ACP X, LP's (the Partnership) assets were invested in defendant NYPPEX Holdings, LLC (Holdings) starting in October 2008, the 2004 and 2005 private placement memoranda (PPMs) for the Partnership were true when issued.
Nevertheless, defendants employed a "device, scheme or artifice to defraud" (General Business Law § 352[1]) "in the . . . exchange . . . [or] sale" of securities (id.) by using artificially high valuations of Holdings in the Partnership's reports to the limited partners, which affected the stated value of each partner's capital account; and the value of the capital account would have been a factor influencing a limited partner's decision to take an early withdrawal pursuant to the Third, Fourth, and Fifth Amendments to the partnership agreement in 2013, 2015, and 2017 (see generally S.E.C. v Pittsford Capital Income Partners, L.L.C., 2007 WL 2455124, *13, 2007 US Dist LEXIS 62338, *44-45 [WD NY, Aug. 23, 2007, No. 06 Civ 6353 T(P)], affd in part, appeal dismissed in part 305 Fed Appx 694 [2d Cir 2008]).
In any event, the complaint is not limited to the Martin Act claim; it also includes claims for breach of fiduciary duty and violation of Executive Law § 63(12). The latter concerns "persistent fraud or illegality in the carrying on, conducting or transaction of business." Allen's statement in July 2015 about the investments that the Partnership would make during the wind-down period was made in the conducting of business.
The court's finding of fraud was not against the weight of the evidence (see generally Richstone v Q-Med, Inc., 186 AD2d 354 [1st Dept 1992]). For example, the court found, "Allen's appropriation of $3.4 million of carried interest was procured by the fraudulent representation to [Partnership] investors that [he] was always entitled to carried interest." Defendants cannot seriously dispute this finding. Indeed, their answer admitted that as of December 4, 2019, "the General Partner [defendant ACP Partners X, LLC, of which Mr. Allen is the managing principal] ha[d] not distributed all of the Limited Partners' contributed capital, and ha[d] [*3]made no distribution toward the preferred return"; hence, the General Partner was not entitled to take carried interest in 2013, 2015, and 2017. Moreover, defendants took carried interest even though their then-counsel told them that they were still in the first stage of the "waterfall" (priority of distributions) and that they could not take carried interest until the third stage. The fact that some limited partners may have testified that they were not deceived is not consequential, as the Attorney General in a Martin Act case does not have to show reliance (see e.g. People v Credit Suisee Sec, [USA] LLC, 31 NY3d 622, 632 [2018]).
Defendants' claim that the trial was so unfair as to require reversal — in part because of the change in the way that the testimony was used by the court from the preliminary injunction hearing to the trial — is unavailing. Defendants failed to show "how this modification disrupted [their] trial strategy or otherwise caused [them] any undue prejudice" (People v Morrow, 261 AD2d 279, 280 [1st Dept 1999], lv denied 93 NY2d 1023 [1999]), and therefore they were not deprived of a fair trial.
The trial court's evidentiary rulings were provident exercises of discretion. Thus, the court properly refused to allow one of defendants' experts to testify on redirect as to matters that were outside the scope of his direct testimony (see e.g. People v Lee, 96 NY2d 157, 162 [2001]). The court also properly refused to allow defendants to use a document that they had not previously disclosed (see Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 139 AD3d 1192, 1194 [3d Dept 2016]). We note that, although the court did not allow defendants to use the spreadsheet, it did allow Mr. Allen to testify at length about the returns to the limited partners. Thus, defendants were not prejudiced by the absence of a spreadsheet detailing the returns for each limited partner. Additionally, the letter from the Financial Industry Regulatory Authority was properly used to attack the credibility of a statement that Allen had made in his direct testimony affidavit (see generally People v Post, 235 AD2d 299 [1st Dept 1997], lv denied 90 NY2d 862 [1997]).
Defendants contend that the preliminary injunction hearing testimony was inadmissible hearsay at trial. However, they agreed in a so-ordered stipulation that "all testimony and exhibits introduced at the . . . hearing . . . shall become part of the trial record" (see People v Bowen, 185 AD3d 1219, 1220 [3d Dept 2020]).
The court providently exercised its discretion by refusing to adjourn the trial (see generally Matter of Anthony M., 63 NY2d 270, 283 [1984]). Similarly, it was not an improvident exercise of discretion (see generally Brooks v Brooks, 37 AD2d 835 [2d Dept 1971]) for the court to deny defendants' demand for a jury trial. Plaintiff filed its note of issue — which did not request a jury trial — on October 30, 2020, but defendants did not request a jury trial until December 14, 2020, well [*4]beyond the 15-day deadline set forth in CPLR 4102(a). In addition, as the court pointed out, jury trials were being held in abeyance at that time due to the Covid pandemic.
We have considered defendants' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 21, 2021