OPINION OF THE COURT
Darrell L. Gavrin, J.
The defendant, Argelis Rosario, was indicted by a grand jury for three counts of course of sexual conduct against a child in the first degree (Penal Law § 130.75) and endangering the welfare of a child (Penal Law § 260.10). The People allege that from 1997 through 2004, the defendant (born in 1983) anally raped, orally sodomized, and otherwise sexually abused a child who was 5 to 11 years of age at the time. (People’s mem of law, Feb. 19, 2008, at 2.)
Under indictment No. 2631/2006, the defendant was indicted for bail jumping in the first degree (Penal Law § 215.57) for failure to appear in court on July 10, 2006, after being released on bail in this case. Indictment No. 2631/2006 was consolidated for trial with this indictment by an order dated May 4, 2007, signed by Honorable James P Griffin.
By notice of motion dated August 27, 2007, the defendant moved for an order allowing expert testimony by Richard J. Ofshe, Ph.D., “regarding the existence of false confessions, namely, that individuals may be coerced into giving false confessions and that certain indicia may be identified to show when false confessions are likely to occur.” In support of this request, the defendant submitted an affirmation from his attorney which asserted that “the defense position is that the defendant’s statements were the result of coercive psychological interrogation techniques applied by Detective Malloy.” (Para 21.) The court granted defendant’s motion to the extent of directing that a Frye hearing be held prior to trial.
On August 14, 2007, this court had conducted a Huntley hearing pursuant to an order dated May 3, 2007. At that hearing, *403 Detective Antoin Malloy testified that the defendant was placed under arrest on June 21, 2006 at the 112th Precinct where the special victims squad is located. The defendant appeared there at about 11:30 a.m. and was informed by the detective that he was being arrested for engaging in sexual acts with a minor. The defendant was given the Miranda warnings and thereafter admitted that he had engaged in oral and anal sexual acts with the complainant. Pursuant to the detective’s request, the defendant wrote and signed a statement, admitting this conduct, and. agreed to make a videotaped statement. At 4:00 p.m., a videotaped interview of the defendant was conducted by an assistant district attorney during which the defendant repeated his admissions.
The defendant did not testify at the suppression hearing. He called two witnesses on his behalf, Kenner Rosario and Noe Suazo. They testified that at approximately 6:00 a.m. on June 21, 2006, Detective Malloy and another officer broke into their house, looking for the defendant. When the police officers were informed that the defendant was in Philadelphia, they told the witnesses that the defendant had an open case and could be arrested and spend 25 years in jail, unless he reported to the precinct by 1:00 p.m. that day. According to the defense witnesses, this “threat” was relayed to the defendant by telephone, after the police left.
The court did not credit the testimony of the two defense witnesses at the Huntley hearing concerning the circumstances that led to defendant’s appearance at the 112th Precinct on June 21, 2006. Upon a review of the testimony of Detective Malloy and of the videotaped interview, the court concluded that the defendant voluntarily appeared at the precinct and that his oral, written and videotaped statements were given “freely and voluntarily without any compelling influence” and thus were admissible in evidence. (People v Jackson, 41 NY2d 146, 151 [1976].) Therefore, defendant’s motion to suppress these statements was denied in all respects. (See People v Rosario, Sup Ct, Queens County, Sept. 26, 2007, Gavrin, J.)
The Frye hearing to determine if expert testimony regarding false confessions would be admissible at trial was held on December 19 and 20, 2007 and January 2, 2008. The sole witness, called by the defendant, was Dr. Richard J. Ofshe. Before the hearing commenced, defense counsel conceded that the proffered testimony of Dr. Ofshe, sought to be introduced at trial, related solely to defendant’s interrogation by the police after he *404 arrived at the precinct. The testimony did not concern any threats allegedly made to induce the defendant to appear at the precinct. (Transcript of minutes of Frye hearing at 12-13.)
Richard J. Ofshe, Ph.D., is Professor Emeritus in the Department of Sociology at the University of California at Berkeley, where he has been on the faculty since 1968. He holds a Bachelor’s degree in psychology and a Master’s degree in sociology from the City of New York, Queens College. In 1968 he received a doctorate in sociology from Stanford University in California. Dr. Ofshe has written and lectured extensively on police interrogation techniques and their influence on a person’s decision to confess. He has worked both with law enforcement and defense counsel. Dr. Ofshe has been recognized, in both federal and state courts, as an expert in the field of coercive psychological police interrogation which may lead to false confessions. (See United States v Hall, 93 F3d 1337 [1996]; Boyer v State, 825 So 2d 418 [Fla 2002]; Carew v State, 817 NE2d 281 [Ind 2004].) Dr. Ofshe has testified on the effects of police interrogation and has been referred to as an expert in numerous cases involving a claim of “false confession” resulting from psychological police coercion. (See Boyer v State at 419 n 1.)
Despite his impressive background, the People contend that Dr. Ofshe is not a qualified expert on the influence of police interrogation. The People assert that he is not a licensed psychologist and has not conducted any clinical work or studies in the area of false confessions. His research is limited to reviewing case files and transcripts and interviewing suspects who have been interrogated, and the cases he reviewed were not selected using scientific methods. Moreover, he relied on the Chicago-based Reid method of interrogation and has no knowledge of interrogation practices used by the New York City Police Department. Additionally, the number of times he was qualified as an expert on “influence in police interrogations” was unsubstantiated. The court has carefully considered the People’s contentions regarding the “expert” status of the witness. However, based on his credentials and extensive recognition, the court finds Dr. Richard J. Ofshe a qualified expert on psychologically coercive police interrogation techniques.
In Frye v United States (293 F 1013 [1923]), decided in 1923, the District of Columbia Court of Appeals, in a two-page opinion, set forth requirements for the admissibility of expert opinion that prevail in New York to date. The Frye court (at 1014) observed: “When the question involved does not lie within the *405 range of common experience or common knowledge, but requires special experience or special knowledge, then the opinions of witnesses skilled in that particular science, art, or trade to which the question relates are admissible in evidence.” The court continued that “while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs” (id.).
The defense and prosecution agree that in applying the four prongs of the Frye test, the court must determine whether such proposed testimony is (1) relevant to an issue in the case, (2) proffered by a qualified expert, (3) on a topic beyond the ken of the average juror, and (4) based on principles that are generally accepted as reliable by the scientific community. (People v LeGrand, 8 NY3d 449, 452 [2007].) The parties concur that the admissibility and bounds of expert testimony are addressed to the sound discretion of the trial court. (People v Cronin, 60 NY2d 430, 433 [1983].)
With one exception (People v Kogut, 10 Misc 3d 305 [2005]), the New York courts have consistently found expert testimony regarding false confessions to be inadmissible. (See generally Shaw v Miller, 2001 WL 739241, 2001 US Dist LEXIS 8715 [2001]; People v Days, 31 AD3d 574 [2006]; People v Shepard, 259 AD2d 775 [1999]; People v Green, 250 AD2d 143 [1998]; People v Rogers, 247 AD2d 765 [1998]; People v Lea, 144 AD2d 863 [1988]; People v Crews, 18 Misc 3d 1120[A], 2008 NY Slip Op 50145[U] [2008]; People v Wiggins, 16 Misc 3d 1136[A], 2007 NY Slip Op 51715[U] [2007]; People v Philips, 180 Misc 2d 934 [1999]; but cf. Singletary v Fischer, 365 F Supp 2d 328 [2005] [mentally retarded defendant].) The court finds that defense counsel has advanced no significant reason to depart from this ruling in the instant case. The court will next discuss seriatim the four prongs for admissibility set forth in the Frye case.
The Proposed Expert Testimony is Not Relevant to Any Issue
in This Case
The defense avers that Detective Malloy employed coercive interrogation tactics which induced Argelis Rosario to make a false confession. In support of this contention, leave is sought at trial to call Dr. Ofshe as an expert witness “to provide the jury *406 with information as to how modern interrogation is conducted and as to how certain tactics can lead to a suspect’s unreliable statements.” (Defendant’s mem of law, Jan. 22, 2008, at 11.) However, there was no evidence adduced at the hearings of any coercive interrogation of the defendant.
Detective Malloy testified at the Huntley hearing held by this court that he did not interrogate the defendant. There is no evidence of coercive interrogation during the videotaped interview of the defendant that was conducted by the assistant district attorney and viewed by the defense and the court at said Huntley hearing. The defendant did not testify at either the Huntley or Frye hearing. The defense did not submit an affidavit or offer of proof that the defendant falsely confessed due to, or as the result of, being subjected to coercive interrogation by the police. The testimony of the two defense witnesses at the Huntley hearing, even if credited, could not support such a conclusion. (See People v McNeil, 273 AD2d 608 [2000].)
The defendant has failed to demonstrate, other than by the unsupported statements in his attorney’s affirmation, that any actions of the police coerced him into falsely confessing that he engaged in sexual acts with a minor. Therefore, the relevancy of expert testimony on this subject has not been sufficiently established. Even jurisdictions which allow expert testimony regarding factors that increase the likelihood of a false confession have held such testimony to be irrelevant and inadmissible unless the defendant introduces evidence of coercive interrogation techniques. (See United States v Hall, 974 F Supp 1198, 1206 [1997].)
Determination of Truthfulness of Confession is Not Beyond Ken of Average Juror
The experts agree that police employ psychologically coercive tactics to induce suspects to confess. (See defendant’s hearing exhibits B, C, D, E.) However, as Dr. Ofshe acknowledged in a recent article entitled Defending the Innocent “undoubtedly many of the suspects exposed to coercive motivators are guilty of the crime.” (Defendant’s mem of law, Jan. 22, 2008, at 7.) According to Dr. Ofshe,
“false confession occurs under circumstances that in the main also lead to confession. It occurs responsive to interrogations that are in the main standard ordinary interrogations, but there are things present in interrogations that can produce a *407 false confession that are add-ons, and everything is necessary in order to make it happen.” (Transcript of minutes of Frye hearing at 81.)
The purpose of Dr. Ofshe’s proposed testimony is to inform the jury that in this case coercive interrogation, which would induce a false confession, was used by the police in obtaining the defendant’s admissions. (Transcript at 131.)
Of necessity, expert testimony invades the province of the jury
“since the expert — and not the jury — draws conclusions from the facts, which the jury is then asked to adopt. Such testimony, however, is admissible where the conclusions to be drawn from the facts ‘depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence.’ (Dougherty v Milliken, 163 NY 527, 533; De Long v County of Erie, 60 NY2d 296.)” (People v Cronin, 60 NY2d 430, 432 [1983]).
Testimony by experts in social science has long been held to be admissible on subjects such as rape trauma syndrome, abused child syndrome and similar conditions to explain the behavior of a victim “that jurors may not be expected to understand.” (People v Carroll, 95 NY2d 375, 387 [2000]; also see People v Taylor, 75 NY2d 277, 288 [1990]; People v Keindl, 68 NY2d 410, 422 [1986].) In recent years, the Court of Appeals has observed, with respect to identification testimony, that although “jurors may be familiar from their own experience with factors relevant to the reliability of eyewitness observation and identification, it cannot be said that psychological studies regarding the accuracy of an identification are within the ken of the typical juror.” (People v Lee, 96 NY2d 157, 162 [2001].)
In 2007, the Court of Appeals in People v LeGrand (supra, 8 NY3d 449 [2007]) found general acceptance by the scientific community of three factors affecting the reliability of eyewitness identification. These factors are: the correlation between confidence and accuracy of identification; the effect of postevent information on accuracy of identification; and confidence malleability. Based upon this finding, the Court ruled that when identification testimony is uncorroborated, it is error not to admit expert testimony as to the effect of these factors on the reliability of the identification testimony, since it would assist the jurors in properly assessing the accuracy of the identification. However, “expert testimony on the subject of false confessions is not of the same character as expert testimony on the *408 subject of eyewitness identifications.” (People v Crews, supra, 2008 NY Slip Op 50145[U], *3.) Of particular note is the fact that the expert testimony admissible on identification concerns the reliability of identification testimony; whereas, the expert testimony sought to be introduced on false confessions concerns the credibility of a confession. The determination of credibility has always been the function of the jury and, as has been noted, expert testimony cannot be used “to bolster the testimony of another witness.” (People v Ciaccio, 47 NY2d 431, 439 [1979].)
A requirement for the admission of expert testimony is that such testimony will give the jurors “more perspective than they get from their day-to-day experience, their common observation and their knowledge.” (People v Young, 7 NY3d 40, 45 [2006] [internal quotation marks omitted], quoting People v Lee, 96 NY2d 157, 162 [2001]; People v Cronin, 60 NY2d 430, 433 [1983].) According to Dr. Ofshe, “false confessions from psychologically and intellectually normal adults come about if and only if a detective introduces into the interrogation a too strong motivator, that is, a motivator that is psychologically coercive.” (Ofshe, Defending the Innocent, as cited in defendant’s mem of law, Jan. 22, 2008, at 7.) There is no reason to conclude that jurors are not capable of recognizing coercive motivators introduced into an interrogation and assessing their effect on a defendant’s confession, without expert testimony. Whether the statements or actions of the police were so coercive as to cause a defendant to involuntarily or falsely confess is a determination which should be made by the jury and not a psychologist or sociologist. Both elements of a confession — voluntariness and truthfulness — can be determined by jurors employing the same factors used to determine the credibility of witnesses and guided by the extensive jury instructions on the evaluation of a defendant’s admissions and confessions. (People v Crews, supra; also see Bixler v State, 582 NW2d 252 [Minn 1998].) Dr. Ofshe’s proposed testimony on false confessions is on a subject within the understanding of a typical juror and its potential value has not been shown to outweigh its “interference with the jury’s province to determine credibility.” (People v Bennett, 79 NY2d 464, 473 [1992].) Therefore, it should not be admitted at trial.
Principles Advocated by Expert are Not Generally Accepted as Reliable by Scientific Community
A false confession was defined by Dr. Ofshe as a confession to the commission of a crime which the person did not commit. *409 (Transcript at 55-56, 145-147, 193.) The experts agree that the police utilize nonphysically coercive techniques to induce a suspect to confess and, that in some cases, the resultant confession has been found to be false. (Transcript at 85-90.) These coercive techniques include prolonged interrogation, deceptive evidence ploys, minimization of the offense and promises of leniency. There are other factors, such as the physical and mental condition of the person being interrogated, which also contribute to a false confession. (Davis and O’Donoghue, The Road to Perdition, defendant’s hearing exhibit D.) In addition, persons have falsely confessed to crimes for personal reasons unrelated to any police interrogation. The authors Kassin and Gudjonsson, in their treatise entitled The Psychology of Confessions-. A Review of the Literature & Issues (5 Psychol Sci Pub Int [No. 2] 33, 49) conclude: “The possible motives for voluntary false confessions are limited only by the imagination.” As examples, they cite instances of a man who confessed to a murder to impress his girlfriend, and another to mislead the police as revenge for being arrested while drinking at a party. (Defendant’s hearing exhibit E at 52.) Not only are the factors which motivate a false confession varied and complex but the majority of confessions are not false. (Transcript at 47, 190.) The interrogation tactics, described by the experts as psychologically coercive, have been utilized by the police to elicit truthful confessions which have led to the solution of serious crimes. Thus expert testimony which seeks to attribute false confessions to psychologically coercive police interrogation is misleading.
In support of the defense position that such expert testimony should be admitted at trial, Dr. Ofshe referred to one study that concluded a confession was as powerful as DNA evidence and that a high percentage of jurors “did not believe that the innocent falsely confessed.” Dr. Ofshe further opined that his testimony would assist the jury in evaluating defendant’s contention that he falsely confessed to the crime as the result of psychologically coercive police interrogation. (Transcript at 133-135.) The federal evidence rule allows testimony concerning scientific or technical evidence if such evidence will aid the fact-finder in understanding the evidence or determining a fact in issue. (See Daubert v Merrell Dow Pharmaceuticals, Inc., 509 US 579, 588-590 [1993].) This rule is also followed in several state jurisdictions that have admitted expert testimony on false confessions. (See Boyer v State, supra, 825 So 2d 418 [2002]; *410 Carew v State, supra, 817 NE2d 281 [2004].) However, New York follows the stricter Frye standard which requires the principle to be sufficiently established to have gained general acceptance, as reliable, in its particular field in order for expert testimony to be introduced. (See People v LeGrand, 8 NY3d at 457; People v Wesley, 83 NY2d 417, 423 [1994]; People v Wernick, 89 NY2d 111, 116 [1996]; People v Rogers, supra, 247 AD2d 765 [1998].)
At the Frye hearing, the defense introduced into evidence publications from several experts who have studied the phenomenon of false confessions. (Transcript at 85-91.) These publications reflect the very limited progress that has been made in developing a truly scientific body of knowledge about false confessions. While the experts agree that psychologically coercive police interrogation is frequently employed in obtaining a confession, there are no statistics which establish the frequency with which such questioning causes a person to falsely confess to a crime. (Transcript at 52, 178-179, 188.) Further, there is no consensus as to specific motivators that induce false confessions. The experts concede that more research is needed and advocate videotaping all interviews and interrogation of suspects. (Transcript at 51-54; Kassin and Gudjonsson, The Psychology of Confessions: A Review of the Literature & Issues, defendant’s hearing exhibit E at 86-88; also see Commonwealth v DiGiambattista, 442 Mass 423, 813 NE2d 516 [2004].) In contrast, in People v LeGrand (8 NY3d at 458), the proposed testimony of the expert regarding certain factors which affected eyewitness identification was supported by a survey, introduced at the Frye hearing, demonstrating acceptance of the factors by experts in the field.
Dr. Ofshe’s intricate testimony and explanation of coercive motivators, which in his opinion can lead to a false confession, was extremely confusing. (See transcript at 93-113; Ofshe and Leo, The Decision to Confess Falsely: Rational Choice and Irrational Action, 74 Denv U L Rev 979-1122 [1997].) He conceded that evaluation of the effect of these motivators was a complex procedure. Despite all his experience, it required hours of study of the interrogation process for him to determine that coercive motivators had probably provoked a false confession. (Transcript at 130.) Ultimately, the reliability of a confession could only be determined, with certainty, if the facts of the crime revealed in the confession corroborated that the confessor committed the crime. Dr. Ofshe failed to enunciate that it is generally accepted *411 by the experts in the field of false confessions that the coercive factors, allegedly used by the police in the interrogation of the defendant, would induce a person, who does not suffer from any personality or mental defect, to falsely confess committing a crime. It is significant that he did not identify the coercive tactics allegedly used by the police in this case. Although Dr. Of-she is a well respected authority in the field of false confession, it is for the court, and not the expert, to determine whether those coercive interrogation tactics are generally accepted as inducing false confessions. Dr. Ofshe’s testimony did not contain “sufficient evidence to confirm that the principles upon which the expert based his conclusions are generally accepted by social scientists and psychologists working in the field.” (People v LeGrand, 8 NY3d at 458; also see People v Leone, 25 NY2d 511 [1969]; People v Williams, 6 NY2d 18 [1959].) Therefore, his anticipated testimony that psychological coercion was employed during the interrogation of defendant, Argelis Rosario, which in his opinion would induce a person to falsely confess, does not meet the Frye standard for admissibility.
Facts of Case Do Not Warrant Exercise of Discretion by Court to Admit Expert Testimony on False Confessions
The case at bar is not a case where the primary evidence is the defendant’s confession, as in the Tankleff murder case and the Central Park jogger rape case, where the defendants were found to have been wrongfully convicted. (See People v Tankleff, 49 AD3d 160 [2007]; People v Wise, 194 Misc 2d 481 [2002].) The alleged victim in the instant case is expected to testify to the sexual acts performed by the defendant. The videotaped confession made to the assistant district attorney is likewise available to assist the jury in assessing the voluntariness and truthfulness of the defendant’s admissions. In the subject case, the corroborating evidence significantly diminishes the importance of the proffered expert testimony on false confessions and, under the circumstances, it would be an unnecessary distraction for the jury. (See People v Young, 7 NY3d 40 [2006]; People v Lee, supra, 96 NY2d 157 [2001].)
The court notes that the cases relied upon by the defense, in which expert testimony regarding false confessions was ruled to be admissible, involved defendants who suffered from some type of personality or mental defect. (See United States v Hall, supra, 93 F3d 1337 [1996]; United States v Shay, 57 F3d 126 [1995]; Singletary v Fischer, supra, 365 F Supp 2d 328 [2005]; Boyer v *412 State, supra, 825 So 2d 418 [2002]; Carew v State, supra, 817 NE2d 281 [2005]; State v Miller, 86 Wash App 1064 [1997].) The defense has not claimed that the defendant Rosario was mentally or otherwise impaired at the time he confessed to having engaged in sexual acts with the infant victim. The jury is therefore capable of assessing the credibility of his confession, as it is the credibility of any other testimony, without the assistance of expert evidence. Therefore, in the exercise of its discretion, the court finds that admission of the proposed expert testimony of Dr. Ofshe on false confessions is unwarranted in this case.
Recommendation for Procedures to be Followed When Issue of False Confession is Raised
The experts who have studied the phenomenon of false confessions are understandably concerned that both judges and juries consider a confession to be strong evidence of guilt and, as a rule, do not accept that a person would falsely confess to a crime. (Transcript at 134-135.) As a result, innocent persons, who falsely confessed to a crime, have been convicted based primarily on the false confession, particularly in homicide cases. (Leo, The Problem of False Confession in America, 31 The Champion 30 [2007].) The court is cognizant of this problem, which has been the focus of study in the publications introduced into evidence by the defense at the Frye hearing. Therefore, it is compelled to make certain observations as to procedures to be followed when a defendant contends he falsely confessed and there is no corroborating evidence that he committed the crime.
In such cases, the trial court must be particularly vigilant to protect against a miscarriage of justice due to a false confession. Initially, defense counsel should be allowed leeway during the jury voir dire to ensure that persons, who cannot accept the principle of a false confession, do not remain on the jury. At trial, the defense should be permitted to explore any coercive motivators employed by the police to procure the confession, as well as any other factors which the defendant claims induced a false confession. The court’s charge, in such cases, should also be tailored to properly present the defendant’s claim of a false confession. This suggested procedure is in accord with the introductory instructions to the pattern jury charge, which state:
“No one jury instruction can apply to all situations given the varied circumstances surrounding the giv *413 ing of statements, and the different instructions requested. What follows is a series of instructions on the most common issues from which the trial court can fashion a charge tailored to the facts and issues of an individual case.” (CJI2d [NY] Confession.)
These procedures, if followed, will afford protection from wrongful conviction to innocent persons who falsely confess to a crime whether due to coercive police interrogation or other factors.
Accordingly, the defendant’s motion for leave to introduce expert testimony by Richard J. Ofshe, Ph.D. regarding false confessions, at trial, is denied.