■ The People of the State of New York, Respondent, v Robert Mims, Appellant. [817 NYS2d 356]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Collini, J.), rendered June 2, 2004, convicting him of robbery in the first degree (two counts), upon a jury verdict, and sentencing him, as a second violent felony offender, to consecutive determinate terms of imprisonment of 22 years. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is modified, on the law, by vacating the conviction of robbery in the first degree under count one of the indictment, and vacating the sentence imposed thereon; that branch of the defendant's omnibus motion which was to suppress identification testimony is granted, and the matter is remitted to the Supreme Court, Kings County, for a new trial on count one of the indictment, to be preceded by an independent source hearing; as so modified, the judgment is affirmed.

Under the circumstances of this case, the hearing court properly denied the defendant's application to call an expert witness on the matter of eyewitness identification (see People v Young, 7 NY3d 40 [2006]; People v Lee, 96 NY2d 157, 162 [2001]; People v Paccione, 295 AD2d 451 [2002]; see also People v Stokes, 25 AD3d 332 [2006], lv denied 6 NY3d 839 [2006]; People v Brown, 14 AD3d 356, 357 [2005]; People v Miller, 8 AD3d 176, 176-177 [2004], mod on other grounds 6 NY3d 295 [2006]; People v Lopez, 1 AD3d 168, 169 [2003]).

However, we agree with the defendant that his lineup identification by Francis Reyes, one of the victims, should have been suppressed. Reyes was robbed on May 17, 2002. He was scheduled to view a lineup at the 73rd Precinct in Brooklyn, on May 29, 2002. At the pretrial Wade hearing (see United States v Wade, 388 US 218 [1967]), Reyes testified that on that day, he arrived at the precinct early, and while outside the precinct, viewed a person he recognized as the man who robbed him being brought into the precinct by a detective. The man was in handcuffs, dressed in a white shirt. Reyes followed them into the precinct and told an officer at the front desk that the handcuffed man was the one who robbed him. While no one told Reyes as much, he testified that the desk officer's "face was like I no [sic] supposed to be there." Twenty to thirty minutes later, Reyes was brought to the lineup. He did not tell anyone else

that he recognized the robber from his earlier viewing. The detectives involved with the lineup were not aware that Reyes had seen the defendant being led into the precinct. Reyes picked the defendant out of the lineup. The defendant was the only one in the lineup wearing a white shirt. At trial, Reyes was unable to make an in-court identification of the defendant.

While Reyes's initial viewing of the defendant, handcuffed and wearing a white shirt, outside of the precinct, was not in any way arranged by the police, Reyes did bring his prior viewing of the defendant to their attention. Under the circumstances, the subsequent lineup, conducted no more than 30 minutes later, in which the defendant was the only participant wearing a white shirt, was unduly suggestive, and the defendant's motion to suppress the lineup identification should have been granted. Accordingly, we remit for a new trial on count one of the indictment, to be preceded by an independent source hearing (*see People v Wilson*, 5 NY3d 778 [2005]).

The defendant contends that in answer to the jury's question of whether it could consider the similarity of the two robberies at issue during its deliberations, the trial court responded, "yes as one of many factors in determining the guilt or innocence of a defendant," and that this supplemental instruction vitiated the trial court's initial and supplemental instructions to the jury to consider the evidence of each crime separately. However, the record discloses that the defense counsel exploited the differences between the two robberies to argue that one of the complainants had fabricated the existence of a second man to make the two robberies appear more similar. He also contrasted the differences between the robberies to the jurors: a single perpetrator wielding a knife versus two perpetrators, one of whom wielded a gun. The defense counsel conceded during his summation that both complainants described one of the perpetrators as a black man, approximately 5 feet 7 inches tall, weighing about 180 pounds. The defense counsel did not object when the prosecutor argued on summation that the two robberies were very similar: both complainants identified the same person, both complainants worked as potato chip deliverymen, and both complainants were robbed from behind during the same time of day at the same time of year by an assailant who only spoke to them from behind. Since the defendant, through his attorney's summation comments, attempted to exploit the differences between the two robberies in order to discredit one of the prosecution's witnesses, he may not argue now that the trial court's supplemental instruction to the jury that it could consider the similarity of the two robberies was erroneous (*see*

*People v Blackman*, 13 AD3d 640, 641 [2004]; *People v Spragis*, 5 AD3d 814, 815 [2004]; *People v Psilakis*, 148 AD2d 475 [1989]; *People v Samuels*, 143 AD2d 856, 857 [1988]).

In light of the foregoing determination, we need not address the defendant's contention that the imposition of consecutive sentences was harsh and excessive. The sentence imposed upon the remaining conviction of robbery in the first degree was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Miller, J.P., Ritter, Skelos and Lifson, JJ., concur.