*320 OPINION OF THE COURT
Joseph D. Valentino, J.
Defendant is charged with “operator leav[ing] scene of accident resulting in death” (Vehicle and Traffic Law § 600 [2] [a]) and falsely reporting an incident in the third degree (Penal Law § 240.50 [3] [a]) in connection with a hit and run fatality of a pedestrian on March 12, 2011, and defendant’s reporting of his car being stolen on March 13, 2011. Allegedly, defendant was the driver of the vehicle involved in the hit and run and Abyan Keels, who witnessed the event, identified defendant as the driver from a photographic array several days later. There is little corroborative evidence besides the eyewitness. The DNA testing of defendant’s car did not confirm the presence of defendant’s blood on the dashboard of his car and although defendant’s DNA was found in his car, such evidence would be expected.
Given the amount of the evidence against defendant, he moved to allow expert testimony at trial regarding eyewitness identification and proposed calling Nancy Franklin, Ph.D., as his expert. The People opposed the motion contending that corroborating evidence renders unnecessary an expert on eyewitness identification and that the expert’s testimony is not beyond the ken of the average juror. Alternatively, the People conceded that some areas of such expert testimony have been vetted through the Frye hearing process. In any event, the court granted defendant a Frye hearing (Frye v United States, 293 F 1013 [DC Cir 1923]), which was held November 7, 2011, to determine the admissibility at trial of expert testimony on eyewitness identification.
Findings of Fact
At the hearing, defendant presented the testimony of Nancy Franklin, Ph.D. The court received in evidence Franklin’s curriculum vitae (defendant’s A). The People did not call any witnesses but subjected Franklin to rigorous cross-examination.
The credible testimony established that Nancy Franklin is a cognitive, not a forensic, psychologist and has been on the faculty at SUNY Stony Brook for the past 22 years. Franklin received a Ph.D. in Psychology from Stanford University in 1989. At Stanford, she was a National Science Foundation graduate fellow. She served as her department head, received various teaching awards, lectures on memory and eyewitness identification, and teaches psychology courses at Stony Brook. *321 Her field is cognition, human cognition and information processing, and her specific field is in memory and false memory. She conducts laboratory research and collects data on cross-racial identification.
Franklin has served on the editorial board of the Journal of Experimental Psychology, Learning Memory and Cognition. She has reviewed grants for the National Institute of Mental Health, for the military, and also for a couple of foundations. She has published numerous articles and chapters in the area of cognition and memory, attends lectures and conferences on cognitive psychology, and keeps current regarding developments in the field of eyewitness identification by reading and studying applicable literature. She has testified as an expert in the field of memory approximately 15 times in two states.
In terms of eyewitness identification, she has experience with eyewitness memory, accurate description of events and identification of persons of a race different from the race of the witness, police identification procedures, perceptual conditions and false memory. Her proposed areas of testimony are (1) identification of strangers, (2) cross-race effect, (3) exposure duration, (4) other perceptual factors, (5) flashbulb memory, (6) event stress, (7) recovered memories, (8) lineup issues, and (9) confidence malleability.
Franklin testified regarding memory and retrieval of memory. In general, memory does not work like a video camera and the memory process is full of opportunities for errors. She discussed the process of encoding as it relates to memory. Regarding identification of strangers, she opined that people are bad at identifications and research shows that people are accurate approximately 50% of the time. Franklin is familiar with the work and meta-analysis of Shapiro and Penrod, whose work is accepted in the field and most people are unfamiliar with factors that affect memory.
Franklin testified regarding the Smechel study which surveyed 1008 juror-eligible citizens by phone in 2004. Eighty-three percent of those surveyed believed that a person’s identification would be accurate and 66% of those surveyed reported “I never forget a face.” Experts however have concluded that memory for strangers’ faces is poor and that constant exposure to a person correlates to never forgetting the person’s face. Also, Franklin is familiar with a 2003 study concerning September 10 and 11, 2001 memories, which studied the vividness of the memories over time.
*322 Eyewitness identification has been studied for the past 40 years. Examples of overturned rape convictions by DNA evidence despite the eyewitness’ identification of defendant demonstrate the inaccuracy of eyewitness identification and memory.
Regarding “cross-race effect,” Franklin revealed that studies of this effect since 1989 have shown that there is a lower rate of correct identification when cross-race is involved which translates to a higher false identification rate. Franklin testified that both blacks and whites are subject to cross-race errors in identifications. According to Franklin, cross-race identification scientific research is generally accepted in the scientific community. The 2001 and 2009 surveys by Penrod researched the cross-race effect.
' Regarding exposure duration, Franklin described the concept as being how long a person looks at the other person. A 2003 Memon, Hope and Bull study showed that if the duration is 12 seconds or less, the correctness of the identification is lowered and there is an increase of false identification. In that study, 90% false identifications were made where the proper person was not in the lineup if the viewing duration was 12 seconds or less. If the exposure is 45 seconds or more, that longer exposure increases the correctness of the identification, with only 40% false identifications. With a 12-second exposure, only 30% chose the correct person when the proper person was in the lineup. Related to exposure duration, Franklin referenced a study which showed that people’s estimation of time of an episode from which a person is identified is often exaggerated, especially in a stressful situation.
According to Franklin perceptual conditions, such as lighting, distance, angle, view and night vision, all affect identification. Studies have been conducted of “angle identification,” as opposed to full face identification, showing a deficit in identification. The literature on these effects is accepted in the scientific community.
Further, Franklin testified that 27 studies have focused on stress and identification, showing that heightened stress makes identification worse. People under stress remember the “gist” better than minor details such as the color of a car.
Regarding studies of lineup or photo array identifications, Franklin testified regarding best practices to be used in creating photographic arrays and in conducting identification procedures with witnesses. She referenced a commission empaneled by for *323 mer United States Attorney General Janet Reno in response to cases of wrongful conviction based on inaccurate eyewitness identification. She discussed how double-blind lineups are less prejudicial. Franklin stressed that the witness must not be led and the instructions given to the viewer are important.
Finally, Franklin discussed studies in the area of the confidence of the witness as opposed to accuracy.
In summary, Franklin testified that these are various factors that would or could impact the witness’ accuracy in identification and contribute to understanding eyewitness memory.
Franklin conceded that some of these studies do not include crime victims. She further stated that she has ongoing research projects in her lab but that she herself has not been published on eyewitness identification. She also agreed that other scientists hold opinions contrary to hers, one of whom has advocated that it may not be appropriate to educate juries about these phenomena when the juries are making decisions about criminal cases. Regarding crime victims and bystanders, Franklin testified that the studies are not clear. Regarding the big picture comparison between crime victims and bystanders is that “some of the work shows one group tends to be better at identification, some of the work shows the other; [fit’s really not clear.”
The above constitutes the relevant testimony and evidence presented during the hearing. Following the hearing, both defendant and the prosecutor submitted post-hearing memoranda.
Conclusions of Law
Recently, the Court of Appeals held:
“A trial court may, in its discretion, admit, limit, or deny the testimony of an expert on the reliability of eyewitness identification, weighing a request to introduce such expert testimony ‘against other relevant factors, such as the centrality of the identification issue and the existence of corroborating evidence’ . . . Because mistaken eyewitness identifications play a significant role in many wrongful convictions, and expert testimony on the subject of eyewitness recognition memory can educate a jury concerning the circumstances in which an eyewitness is more likely to make such mistakes, ‘courts are encouraged ... in appropriate cases’ to grant defendants’ motions to admit expert testimony on *324 this subject.” (People v Santiago, 17 NY3d 661, 668-669 [Oct. 20, 2011] [citations omitted].)
When a case turns on the accuracy of an eyewitness identification and little to no corroborating evidence connects the defendant to the charged crime, the defendant is entitled to call an expert on eyewitness identification provided a four-part test is satisfied (see People v Abney, 13 NY3d 251, 267 [2009]; People v LeGrand, 8 NY3d 449, 452 [2007]). Under this four-part test, such expert testimony is admissible if it is: “(1) relevant to the witness’ identification, (2) proffered by a qualified expert, (3) on a topic beyond the ken of the average juror, and (4) based on principles that are generally accepted as reliable by the scientific community” (People v Banks, 16 Misc 3d 929, 935 [Westchester County Ct 2007], affd 74 AD3d 1214 [2d Dept 2010], lv denied 15 NY3d 849 [2010], citing People v LeGrand, 8 NY3d at 452; see People v Abney, 13 NY3d at 267). In terms of the Frye hearing, regarding the nine factors identified by the defense and the underlying research which defendant seeks to introduce through Franklin’s trial testimony, the issues are two part — (1) based on scientific principles and research that is generally accepted by the relevant scientific community, and (2) if so, whether the court should allow such expert testimony to assist the jury.
Preliminarily, Franklin is an expert in her field. She has the requisite scientific background and knowledge to testify as an expert in the field of eyewitness identification. She is well credentialed and earlier this year another trial court, following a Frye hearing, found her to be qualified to testify as an expert in the field of memory and to offer opinions with respect to “event stress, exposure time, event violence weapon focus, and cross-racial identification” (People v Abney, 31 Misc 3d 1231 [A], 2011 NY Slip Op 50919[U] [Sup Ct, NY County 2011]).
Next, the court considers the relevance of the proposed testimony. Franklin’s proffered testimony is relevant to the central issue in the case, the identification of defendant as the driver during the hit and run and the facts and circumstances surrounding the identification. All nine factors are at issue here, (1) identification of a stranger (Keels does not know defendant), (2) cross-race effect (Keels is African American and defendant is Caucasian), (3) exposure duration (Keels observed the driver briefly), (4) other perceptual factors (how Keels observed the driver at night, from an angle), (5) flashbulb memory (memories of a notable event), (6) event stress (observing a *325 hit and run accident), (7) recovered memories (Keels recalled more details regarding the event two days later following a dream), (8) lineup issues (how the photo array was created and conducted), and (9) confidence malleability (possible witness’ increased confidence over time).
It appears that the Court of Appeals in People v Santiago (17 NY3d 661 [2011]), answered the question of being beyond the ken of the average juror in the affirmative as to cross-race effect and the effects of post-event information on eyewitness memory. The studies cited by Franklin demonstrate that people are unaware of the phenomena involved with memory and identification. The Court of Appeals cautioned that trial courts “should . . . give[ ] more adequate consideration to whether the proposed testimony concerning exposure time, lineup fairness, the forgetting curve, and simultaneous versus sequential lineups [are] relevant. . . and beyond the ken of the average juror” (id. at 672). Having considered Franklin’s testimony, the proffered testimony on memory and its effect upon identification are beyond the ken of the average juror.
Franklin’s testimony demonstrated that her proposed testimony is based on principles that are generally accepted as reliable by the scientific community notwithstanding that some experts hold a contrary opinion. “We are to count the number and percentage of scientists favoring the principle, not measure its soundness” (People v Williams, 14 Misc 3d 571, 587 [Sup Ct, Kings County 2006]). Although the People identified two other individuals who hold contrary opinions of the science involved, more that 100 other psychologists accept the principles espoused by Franklin regarding memory and identification (“Certainly there are more people beyond that group of 100 that can speak to these phenomena” [Frye hearing transcript at 141]).
Without testifying about the ultimate issue before the jury, Franklin may explain to the jury the problems associated with the following factors, which relate to the identification in this case: (1) identification of strangers, (2) cross-race effect, (3) exposure duration, (4) other perceptual factors, (5) flashbulb memory, (6) event stress, (7) recovered memories, (8) lineup issues, and (9) confidence malleability.