# SUPREME COURT OF THE UNITED STATES

## DAVID UNGER, SUPERINTENDENT, WYOMING CORRECTIONAL FACILITY *v.* RUDOLF YOUNG

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 13-95.   Decided November 12, 2013

The motion of respondent for the leave to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is denied.

JUSTICE ALITO, joined by JUSTICE SCALIA, dissenting from the denial of certiorari.

The United States Court of Appeals for the Second Circuit granted habeas relief in this case after concluding that New York's highest court unreasonably applied our decision in *United States* v. *Wade*, 388 U. S. 218 (1967), when it determined that a witness' prolonged observation of a burglar in a well-lighted area of her own home provided an independent source for her in-court identification of respondent. Because the Second Circuit's decision contravenes the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, our decision in *Cullen* v. *Pinholster*, 563 U. S. ___ (2011), and *Wade* itself, I would grant the petition and reverse.

## I

In 1991, a burglar invaded the home of William and Lisa Sykes. In a well-lighted area of the home, the burglar brandished an axe over the head of Mr. Sykes, who was confined to a wheelchair, and demanded money. Mrs. Sykes was standing only three or four feet away from the burglar. Although his body was covered with a blanket and the lower part of his face with a scarf, Mrs. Sykes was able to observe clearly the upper part of his face. At first Mrs. Sykes was unable to believe that a burglar had en-

tered the house; she thought the incident might be a prank by someone she knew, and therefore stared at the burglar's eyes to see if she could detect his identity.

The burglar remained in the Sykeses' home for five to seven minutes. During the course of the burglary, he took cash from Mr. Sykes' wallet and Mrs. Sykes' purse, as well as three watches, and a pair of binoculars with the name "Sykes" written on them. Mrs. Sykes continued to stare at the burglar while he was in the house, at one point prompting the burglar to order her, "'Don't look at my face.'" App. C to App. to Pet. for Cert. 101a. After ripping two telephones out of the wall to prevent Mr. or Mrs. Sykes from calling the police, the burglar left the house.

The police later arrested respondent. Mrs. Sykes identified him at a lineup on the basis of his appearance and voice, but a state court later concluded that the police lacked probable cause to arrest respondent, and that the lineup was tainted by the illegal arrest.

At respondent's trial, the prosecution introduced a variety of evidence that respondent was the burglar. For instance, an acquaintance of respondent's testified that, at about the time of the burglary, respondent sold her a pair of binoculars bearing the name "Sykes" and three watches like those stolen from the Sykeses' home. Mrs. Sykes also testified and identified respondent as the burglar. She was permitted to identify respondent on the grounds that her observations of the burglar during the course of the crime provided an independent source of identification.

On direct appeal, the New York Court of Appeals correctly cited this Court's decision in *Wade, supra*, as providing the governing standard for respondent's independent source challenge, which it rejected. *People* v. *Young*, 7 N. Y. 3d 40, 44, 850 N. E. 2d 623, 626 (2006). Respondent then filed a petition for habeas relief, which the District Court granted. The Second Circuit affirmed, concluding that the New York Court of Appeals' application of *Wade* was unreasonable because all six *Wade* factors favored

respondent. In particular, the Second Circuit cited two sources of authority for its determination that the first *Wade* factor, the witness' "prior opportunity to observe the alleged criminal act," *Wade*, *supra*, at 241, favored respondent: Second Circuit precedent and several social science studies that questioned an eyewitness' ability to make an accurate identification in circumstances like those present here. *Young* v. *Conway*, 698 F. 3d 69, 80–83 (2012).

The State petitioned for rehearing en banc. The Second Circuit denied the petition, with Judges Cabranes, Raggi, and Livingston dissenting from denial.

## II

There is no dispute that the New York Court of Appeals applied the correct legal standard in this case. Nor is it disputed that, because this Court has not given relevant guidance on how to weigh the various *Wade* factors, the Second Circuit's decision is tenable only if that court correctly concluded that all the factors favor respondent.

That conclusion, however, is deeply flawed. In the first place, the Second Circuit relied on its own precedent to determine that the first *Wade* factor favored respondent—a choice that AEDPA clearly forecloses. See 28 U. S. C. §2254(d)(1) (limiting habeas relief to cases in which a state court rendered a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

The only other basis for the Second Circuit's conclusion on the first factor is its citation to several social science studies that were never presented to the state courts. We stated very clearly in *Pinholster* that "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U. S., at ___ (slip op., at 9). The lower court attempted to distinguish *Pinholster* by explaining that the social science

studies "reinforced," but did not "compe[l] or contro[l]," its conclusion that the New York Court of Appeals unreasonably applied *Wade*. 698 F. 3d, at 79, n. 8. But we drew no such distinction between "reinforcing" and "controlling" evidence in *Pinholster*, and the Second Circuit erred by doing so here. In any event, if it is true that the studies merely "reinforced" the Second Circuit's conclusion, then that conclusion must have been "compelled" by the only other authority on which the court relied: its own precedent. And as noted, AEDPA flatly prohibits such reliance.*

More fundamentally, the Second Circuit's disagreement is not with the New York Court of Appeals; it is with us. Mrs. Sykes unquestionably had a substantial opportunity to observe the burglar. We held in *Wade* that "the prior opportunity to observe the alleged criminal act" favors finding that an independent source exists. 388 U. S., at 241. The Second Circuit held, to the contrary, that such an opportunity does not suggest the existence of an independent source in the circumstances of this case. *Wade* simply does not leave that option on the table.

The Second Circuit's decision creates loopholes in both *Pinholster* and *Wade*. In my view, the importance of this issue warrants review at this time. I respectfully dissent from the denial of certiorari.

———————

  *The analysis of the court below cannot be defended on the ground that *Pinholster* concerns only adjudicative facts and that the data in the social science studies constituted legislative facts. See Advisory Committee's Note on subd. (a) of Fed. Rule Evid. 201, 28 U. S. C. App., p. 319. *Pinholster* does not mention any such distinction, but even if *Pinholster* is limited in this way, the Second Circuit's analysis would still be flawed. By accepting and applying the factual conclusions drawn in the studies in question to conclude that, in the circumstances presented, Mrs. Sykes' prior opportunity to observe the burglar did not suggest the existence of an independent source, the Second Circuit significantly altered the holding in *Wade*, as explained *infra* this page.