# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**232**
**KA 11-01614**
PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, LINDLEY, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

JAMELL R. MCCULLOUGH, DEFENDANT-APPELLANT.

---

EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Joseph D. Valentino, J.), rendered November 3, 2010. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, robbery in the first degree and attempted robbery in the first degree.

It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [3]) and robbery in the first degree (§ 160.15 [4]), defendant contends that Supreme Court abused its discretion in precluding him from presenting expert testimony on the reliability of eyewitness identifications. We agree.

"Because mistaken eyewitness identifications play a significant role in many wrongful convictions, and expert testimony on the subject of eyewitness recognition memory can educate a jury concerning the circumstances in which an eyewitness is more likely to make such mistakes, 'courts are encouraged . . . in appropriate cases' to grant defendants' motions to admit expert testimony on this subject" (*People v Santiago*, 17 NY3d 661, 669, quoting *People v Drake*, 7 NY3d 28, 31). In *People v LeGrand* (8 NY3d 449), the Court of Appeals established a two-stage inquiry for considering a motion to admit expert testimony on eyewitness identification (*see Santiago*, 17 NY3d at 669). "The first stage is deciding whether the case 'turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime' (*LeGrand*, 8 NY3d at 452). If the trial court finds itself with such a case, then it must proceed to the second stage, which involves the application of four factors. The court must decide whether the proposed 'testimony is (1)

relevant to the witness's identification of defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror' (*id.*).  If, on the other hand, sufficient evidence corroborates an eyewitness's identification of the defendant, then there is no obligation on the part of the trial court to proceed to the second stage of analysis, because testimony concerning eyewitness identifications is unnecessary" (*Santiago*, 17 NY3d at 669).

Here, the People concede that this case hinges upon the accuracy of the eyewitness's identification of defendant, and we agree with defendant that there was little or no corroborating evidence connecting him to the crime (*see LeGrand*, 8 NY3d at 452).  The eyewitness testified that, on the evening of December 27, 2008, he was with the victim at the victim's barbershop when a man exited a white Chevy Malibu and asked if he could still get a haircut.  The victim said yes, and the man sat down in a barber chair.  Shortly thereafter, three men entered the shop.  The first two men to enter were dark-skinned, and the first of the two men (hereafter, the shooter) wore a dark coat and a black winter hat.  The third man to enter was lighter-skinned and taller, with a bright orange coat and matching baseball cap, and he tried to lock the door behind him.  The men ordered the victim and the eyewitness to the ground, demanding money and drugs. After taking approximately $200 from the victim, the shooter fatally shot the victim, and the assailants fled.  The shooter returned briefly, and the eyewitness heard a "clicking sound over his head." The shooter then left the shop and the eyewitness called 911.

Later that evening, a police officer responding to a dispatch about the robbery encountered and pursued a white Chevy Malibu with three men inside.  The three men fled on foot, but the officer apprehended the driver, Willie Harvey.  The officer transported Harvey back to the crime scene, where a witness who had been waiting for a bus near the barber shop when the robbery occurred identified him.  A few weeks after the robbery, the police showed the eyewitness a photo array containing a photograph of defendant.  The eyewitness pointed to defendant's photograph and said, "that looks a lot like the shooter," i.e., the first man to enter the shop.  Two months later, the eyewitness identified defendant in a lineup as "the last guy who came into the barber shop," and he identified defendant as such at trial. Defendant was the only individual included in both the photo array and the lineup.

Contrary to the contention of the dissent, the fact that the eyewitness viewed the perpetrators at relatively close range and in well-lit conditions "does not constitute corroborating evidence of *the identification* for purposes of determining whether expert testimony regarding the accuracy of an eyewitness identification is admissible" (*People v Nazario*, 100 AD3d 783, 784, *lv denied* 20 NY3d 1063 [emphasis added]; *see Santiago*, 17 NY3d at 669).  The only testimony corroborating the eyewitness's identification of defendant came from Harvey, who even the prosecutor characterized as "a liar."  Harvey initially denied any knowledge of the robbery, and thereafter

identified other individuals as the perpetrators. When shown a photo array containing defendant's photograph about a month after the robbery, Harvey told the police that he did not recognize anyone. Harvey only identified defendant as one of the perpetrators minutes before he pleaded guilty to robbery in the first degree in exchange for the minimum sentence of 10 years. In addition to Harvey's dubious credibility, we note that "several factors call [his] corroborating identification[] into question" (*Santiago*, 17 NY3d at 673). Harvey had never met defendant prior to the robbery, he remained in the vehicle during the robbery, and he had limited opportunities to observe defendant that night (*cf. People v Muhammad*, 17 NY3d 532, 546; *People v Abney*, 13 NY3d 251, 269). We therefore agree with defendant that Harvey's testimony was insufficient to relieve the court of its obligation to proceed to the second stage of the *LeGrand* analysis (*see Santiago*, 17 NY3d at 673).

With respect to the second stage of the analysis, we conclude that the proposed testimony "satisfies the general criteria for the admissibility of expert proof" (*Muhammad*, 17 NY3d at 546), i.e., it is " '(1) relevant to the witness's identification of defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror' " (*Santiago*, 17 NY3d at 669, quoting *LeGrand*, 8 NY3d at 452). Defendant sought to introduce expert testimony from Dr. Nancy Franklin, a psychologist, concerning various factors that affect the reliability of eyewitness identifications, including "the level of violence of the interaction [event violence], the length of time of the incident [event duration], [and] the presence of a weapon or other attention-calling object [weapon focus]." Those factors are clearly relevant to the eyewitness's identification of defendant (*see Abney*, 13 NY3d at 268). With respect to event violence and weapon focus, the eyewitness testified that one of the assailants put a gun to his head, pistol-whipped both him and the victim, and then shot the victim in the chest at close range. At least one of the other assailants also displayed a handgun. After the assailants fled, the shooter returned and the eyewitness heard a "clicking sound" over his head. The eyewitness testified that he did not know how long the robbery lasted. With respect to general acceptance in the scientific community, we "must assume on this record" that Franklin's proposed testimony is based on principles that are generally accepted in the scientific community because "defendant sought, and was denied, a *Frye* hearing on that issue" (*People v Oddone*, 22 NY3d 369, 379). Finally, we agree with defendant that Franklin is a qualified expert on eyewitness identifications (*see People v Norstrand*, 35 Misc 3d 367, 372; *Abney*, 31 Misc 3d 1231[A], *9-13, 2011 NY Slip Op 50919[U], *on remand from* 13 NY3d 251), and that the subject of her proposed testimony is beyond the ken of the average juror (*see People v Lee*, 96 NY2d 157, 162).

Because the evidence of defendant's guilt is not overwhelming, the error cannot be deemed harmless (*see Santiago*, 17 NY3d at 673-674; *Abney*, 13 NY3d at 268; *Nazario*, 100 AD3d at 785). We therefore reverse the judgment and grant defendant a new trial.

All concur except SCUDDER, P.J., and LINDLEY, J., who dissent and vote to affirm in the following memorandum:  We respectfully dissent. We disagree with the conclusion of the majority that Supreme Court abused its discretion in denying defendant's motion seeking to present expert testimony on the reliability of the eyewitness identification of defendant.  The court denied the motion in limine, but granted leave to renew at the close of the People's case.  The court denied the motion on renewal after having the opportunity to hear the detailed testimony of the eyewitness, and to assess the credibility of defendant's accomplice and the reliability of his identification of defendant, before determining that the testimony of the accomplice provided sufficient corroboration for the eyewitness testimony (*see People v Lee*, 96 NY2d 157, 162-163).

Although "the case turns on the accuracy of [the] eyewitness identification[]" (*People v LeGrand*, 8 NY3d 449, 452), we conclude that the identification of defendant by the eyewitness was corroborated by the reliable testimony of the accomplice, and thus we disagree with the majority that an analysis of the factors in the second stage of the *LeGrand* analysis is necessary (*see generally People v Santiago*, 17 NY3d 661, 669).  In any event, we respectfully disagree with the majority that expert testimony regarding the impact of "event violence," "event duration," and "weapon focus" on the reliability of eyewitness identification is generally accepted in the scientific community.  Indeed, the Court of Appeals has previously concluded that a *Frye* hearing was required with respect to those precise factors (*see People v Abney*, 13 NY3d 251, 268).  We also disagree with the majority's conclusion that the court's denial of the request for a *Frye* hearing constitutes a determination that the proposed testimony is based on principles that are generally accepted in the scientific community.  Instead, the court denied the request for the *Frye* hearing, which was made in the alternative to the motion to admit the expert testimony, because it determined that the expert testimony was "not needed."

We agree with the court that, here, expert testimony on eyewitness recognition memory was "not needed" to assist the jury because the record establishes that the eyewitness provided very detailed testimony regarding the events, including a description of defendant and his actions, which was sufficiently corroborated by the identification of defendant by one of his accomplices.  Contrary to the assertion of the majority, we do not conclude that the conditions under which the eyewitness viewed defendant *corroborate* his identification of defendant but, instead, we conclude that those conditions support the reliability of that testimony (*see generally People v Young*, 7 NY3d 40, 45).  The eyewitness testified that he observed a man exit a white Chevy Malibu at the victim's barbershop on the evening of December 27, 2008 at approximately 10:00 p.m. and the man asked the victim whether he could still get a haircut.  The eyewitness testified that while the man was seated in the barber chair, he was seated in another barber chair, nine feet from the door in the well-lit room, with an unobstructed view of the door.  He observed three men enter the barber shop, and each of the men looked directly at the eyewitness.  The third man, whom he identified as

defendant, was described by the eyewitness as "lighter than the rest of them" and "tall . . . The other two that came in were short, shorter."  The eyewitness described defendant as wearing dark jeans and an orange coat with a baseball cap that matched his coat.  He testified that defendant "looked at [him] before he turned to lock the door" and that the deadbolt lock did not work.  Defendant's face was not concealed in any manner (*cf. Santiago*, 17 NY3d at 664; *Young*, 7 NY3d at 42).  "It does not require scientific research . . . to establish that an identification is more reliable when the witness's original opportunity to observe was good" (*Young*, 7 NY3d at 45).

The eyewitness also described the other participants by the clothing they wore, their skin tone, and the order in which they entered the barber shop.  He explained that the first man (hereafter the shooter) asked "where's the bud at," meaning marihuana.  The eyewitness described the events as they unfolded in detail; he described what specific participants said and how the shooter shot the victim, and he testified that the shooter held a gun to his head, that the man in the barber chair produced a gun, that a third man also had a gun, that the men, including defendant, searched the barbershop for drugs, and that the man in the barber chair exited the barber shop first and the shooter exited last.  Thus, we conclude that the opportunity for the eyewitness to observe defendant was not brief (*cf. Santiago*, 17 NY3d at 664), or "fleeting" (*Abney*, 13 NY3d at 257).

The court also did not abuse its discretion in determining that the eyewitness's testimony was corroborated by the testimony of defendant's accomplice, Willie Harvey (*see Abney*, 13 NY3d at 269).  Harvey testified that he and his brother met his cousin and two men he did not know at his cousin's house.  He observed his cousin and the two men enter a vehicle, and he and his brother drove to the barber shop in a white Chevy Malibu, which his brother exited to enter the barber shop.  Harvey testified that he parked the Malibu to wait for the others.  He estimated that he waited 10 to 15 minutes, based on the fact that he made two telephone calls while he waited.  He observed his brother, cousin and the other two men walk towards his car and the men traveled in two cars to his cousin's house.  At his cousin's house, while still seated in the driver's seat, Harvey observed the four men place marihuana and "two or three" handguns on the hood of the Malibu.  Although Harvey did not know defendant personally before the night in question, the record establishes that he observed defendant before and after the crime (*see generally People v Muhammad*, 17 NY3d 532, 546).  We therefore conclude that Harvey's testimony "harmonize[d] with the [eyewitness's] testimony in such a manner as to furnish the necessary connection between the defendant and the crime" (*People v Nazario*, 100 AD3d 783, 784, *lv denied* 20 NY3d 1063).

Although the majority properly notes that Harvey failed to identify defendant in a photo array, Harvey explained on redirect examination that he recognized defendant but did not identify him because he did not know at that time what part his brother played in the crimes.  The majority also properly notes that Harvey was characterized by the prosecutor as "a liar."  We nevertheless disagree

with the majority's conclusion that Harvey's "dubious credibility" with respect to portions of his testimony renders his identification of defendant unreliable for the purpose of providing corroborative evidence of the eyewitness identification.  Instead, we conclude that the court, which observed Harvey and heard his testimony, is in the best position to determine whether the testimony with respect to Harvey's ability to identify defendant was sufficient to establish the reliability of that identification, and thus to constitute sufficient corroborating evidence of the eyewitness identification (*see generally Allen*, 13 NY3d at 269; *Lee*, 96 NY2d at 163).

"A trial court may, in its discretion, admit, limit, or deny the testimony of an expert on the reliability of eyewitness identification, weighing a request to introduce such expert testimony 'against other relevant factors, such as the centrality of the identification issue and the existence of corroborating evidence' " (*Santiago*, 17 NY3d at 668-669, quoting *Lee*, 96 NY2d at 163).  Because we conclude that the court did not abuse its sound discretion in denying the motion to present expert testimony on the reliability of the eyewitness identification (*see Lee*, 96 NY2d at 163), we would affirm the judgment.

Entered:  March 27, 2015                      Frances E. Cafarell
                                              Clerk of the Court